# In the United States Court of Federal Claims

| | |
|---|---|
| IN RE DOWNSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | |
| THIS DOCUMENT APPLIES TO:<br><br>CASE NO. 1:17−cv−01972−SGB<br><br>PHILIP H. AZAR, II, ABIRA AND RANJAN BHATTACHARJEE, ELISA AND TIMOTHY BUNDA, MARGOT A. COMBS, OLGA CORTEZ, LAURINDA H. GONCALVES, BLAKE AND MORGAN HOTZEL, NICOLE C. JASPER, FARIBA MEHDIZADEH, ALBERT R. PHILEN, CHESTER R. PHILEN, MEMORIAL TURKEY CREEK, LIMITIED, DOROTHY M. ROSS, GLENN SCHAEFER, DARRYL A. SCHROEDER, MICHELLE D. SHUTTS, SHEILA SULLIVAN, JANICE E. VARGO, JACQUELINE J.WILKINSON, AND MARGARET C. WILSON<br><br>    *Plaintiffs,*<br><br>v.<br><br>THE UNITED STATES<br><br>    *Defendants.* | SUB-MASTER DOCKET NO. 17-9002L |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs PHILIP H. AZAR, II, ABIRA AND RANJAN BHATTACHARJEE, ELISA AND TIMOTHY BUNDA, MARGOT A. COMBS, OLGA CORTEZ, LAURINDA H. GONCALVES, BLAKE AND MORGAN HOTZEL, NICOLE C. JASPER, FARIBA MEHDIZADEH, ALBERT PHILEN, CHESTER R. PHILEN, MEMORIAL TURKEY CREEK, LIMITED, DOROTHY M. ROSS, GLENN SCHAEFER, DARRYL A. SCHROEDER,

MICHELLE D. SHUTTS, SHEILA SULLIVAN, JANICE E. VARGO, JACQUELINE J.WILKINSON, AND MARGARET C. WILSON, file this Amended Complaint against Defendant, The United States, to seek just compensation under the Fifth Amendment to the United States Constitution for the taking of their private property for public use when the U.S. Army Corps of Engineers flooded their homes by releasing water from the Addicks and Barker Reservoirs in Houston, Texas.  In support, Plaintiffs would respectfully show the following:

## I. PARTIES

1. Plaintiffs are citizens of the United States who own private property, both real and personal, in Harris County, Texas

2. Plaintiff PHILIP H. AZAR, II is an individual and resident of Harris County, Texas, who owns real and personal property located at 3 Magnolia Bend Drive, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the Corps' decision to appropriate his property as a flooding easement.

3. Plaintiffs ABIRA AND RANJAN BHATTACHARJEE are husband and wife, and residents of Harris County, Texas, who own real and personal property located at 1500 Sandy Springs, Unit No. 33, Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate their property as a flooding easement.

4.     Plaintiffs ELISA AND TIMOTHY BUNDA are husband and wife, and residents of Harris County, Texas, who own real and personal property located at 12625 Memorial Drive, Unit No. 9, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate their property as a flooding easement.

5.     Plaintiff MARGOT A. COMBS is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Drive, #13, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

6.     Plaintiff OLGA CORTEZ is an individual and resident of Harris County, Texas, who owns real and personal property located at 12714 Havant Circle, Houston, TX 77077. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

7.     Plaintiff LAURINDA H. GONCALVES is an individual and resident of Harris County, Texas, who owns real and personal property located at 626 N. Eldridge Parkway, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the

structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

8. Plaintiffs BLAKE AND MORGAN HOTZEL are husband and wife, and residents of Harris County, Texas, who own real and personal property located at 210 Renoir Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate their property as a flooding easement.

9. Plaintiff NICOLE C. JASPER is an individual and resident of Harris County, Texas, who owns real and personal property located at 6 Hickory Ridge, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

10. Plaintiff FARIBA MEHDIZADEH is an individual and resident of Harris County, Texas, who owns real and personal property located at 600 Wilcrest Drive, Unit 21, Houston, TX 77042. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

11. Plaintiff MEMORIAL TURKEY CREEK, LIMITED, is limited partnership, formed in Texas and with its principal place of business in Harris County, Texas and owns property located at 15115 Memorial Drive, Houston, Texas 77079. Plaintiff has suffered damages to its real

property, including decreased market value of the real property, and loss of business income resulting from the Corps' decision to appropriate its property as a flooding easement.

12. Plaintiff ALBERT R. PHILEN is an individual and resident of Harris County, Texas, who owns real and personal property located at 14615 Bramblewood Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the Corps' decision to appropriate his property as a flooding easement.

13. Plaintiff CHESTER R. PHILEN is an individual and resident of Harris County, Texas, who owns real and personal property located at 14835 River Forest Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the Corps' decision to appropriate his property as a flooding easement.

14. Plaintiff DOROTHY M. ROSS is an individual and resident of Harris County, Texas, who owns real and personal property located 1230 Trace Drive, Houston, TX 77077. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

15. Plaintiff GLENN SCHAEFER is an individual and resident of Harris County, Texas, who owns real and personal property located at 14114 Bluebird Lane, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and

personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the Corps' decision to appropriate his property as a flooding easement.

16.     Plaintiff DARRYL A. SCHROEDER is an individual and resident of Harris County, Texas, who owns real and personal property located at 214 Voss, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the Corps' decision to appropriate his property as a flooding easement.

17.     Plaintiff MICHELLE D. SHUTTS is an individual and resident of Harris County, Texas, who owns real and personal property located 201 Vanderpool, Unit 37, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

18.     Plaintiff SHEILA SULLIVAN is an individual and resident of Harris County, Texas, who owns real and personal property located 12625 Memorial Dr., Unit 5, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

19.     Plaintiff JANICE E. VARGO is an individual and resident of Harris County, Texas, who owns real and personal property located at 201 Vanderpool, Unit 40, Houston, TX 77024.

Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

20. Plaintiff JACQUELINE J.WILKINSON is an individual and resident of Harris County, Texas, who owns real and personal property located 12815 Traviata Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

21. Plaintiff MARGARET C. WILSON is an individual and resident of Harris County, Texas, who owns real and personal property located 14914 La Quinta Lane, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the Corps' decision to appropriate her property as a flooding easement.

22. Defendant is the United States of America, including the U.S. Army Corps of Engineers, and any federal, state or local agency working under the auspices of the federal government, all of whom may be serviced through the National Courts Section, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. 20530, telephone: (202) 514-7300.

## II. STATEMENT OF JURISDICTION

23. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a)(1) as this action seeks monetary compensation from the United States, pursuant to the Fifth Amendment to the U.S. Constitution, for its taking of Plaintiffs' private properties for public use, without just compensation. Plaintiffs each seek just compensation in excess of $10,000.00.

## III. PREVIOUS LAWSUITS

24. Plaintiffs have not filed any other lawsuits in state or federal court dealing with the same or similar facts involved in this action.

25. This Court has not certified any class action. A class action of this type of case is inappropriate.

## IV. FACTS COMMON TO ALL CLAIMS ASSERTED

### A. Harvey Makes Landfall

26. On August 25, 2017, Hurricane Harvey ("Harvey"), made landfall on the Texas Gulf Coast, bringing torrential rain which resulted in extensive flooding to the Houston, Texas area.

27. Over a four-day period, parts of Southeast Texas (including Houston) received over forty inches of rain and experienced catastrophic flooding that submerged thousands of homes. However, despite Harvey's magnitude, the majority of Plaintiffs' property did not experience flooding during this time.

### B. The Addicks and Barker Reservoir Systems

28. The Addicks and Barker Reservoirs are part of a flood control system on the west side of Houston, Texas.

29.     The reservoirs' dams are owned and operated by the U.S. Army Corps of Engineers ("the Corps") and were designed specifically to protect downtown Houston from catastrophic flooding, after a major flood inundated the City of Houston in 1935.

30.     The reservoirs' dams protect Houston from floods by controlling the flow of water in the Buffalo Bayou, which is the largest waterway running through the City of Houston.

31.     The reservoirs function as "dry reservoirs," meaning the dams stay open and water is allowed to flow freely until the area receives heavy rainfall. Once the dam systems' flood gauges reach certain levels, the dams' floodgates close and they begin to fill to prevent the flow of uncontrollable water into Buffalo Bayou.

32.     When Harvey arrived into the Houston area, the Addicks and Barker reservoirs and dam systems were in the middle of a $75 million renovation.

     **C.**    **The Corps Decides to Release Water from Reservoirs and Cause Flooding**

33.     On August 28, 2017, at some point between midnight and 2:00 a.m., the Corps began releasing water from both the Addicks and Barker reservoir systems and announced that thousands of properties would certainly experience flooding as a result of the release, with thousand, more possible. The Corps knew its decision would cause flooding to neighborhoods along and near the Buffalo Bayou, which included Plaintiffs' homes and property.

34.     As both reservoir gates opened and released storm water into Buffalo Bayou, neighborhoods, buildings, homes, offices, and roadways that were not otherwise flooded from Harvey—including Plaintiffs' properties—became inundated with water. The incoming water continued to rise throughout the night and over the course of the next several days. Because of the rapid progression of the rising water, many people did not have time to pack up or salvage any

belongings. Ultimately, many had to be rescued by boat, taking along nothing but the clothes on their backs.

35. The Federal Emergency Management Agency ("FEMA") recommended that property owners immediately document flood damage and then identify what can be saved and what can not. FEMA also recommended that homeowners immediately strip homes of all furnishings and other items impacted by water, to rip up carpet, to remove the first four feet of drywall and insulation on the ground level and, if the water rose above four feet, to rip entire walls out.

36. Importantly, the Center for Disease Control ("CDC"), together with FEMA, the Environmental Protection Agency, the U.S. Department of Housing and Urban Development, and the National Institutes of Health, specifically recommend that flooded homes be completely dried out within 24 to 48 hours of water exposure in an effort to prevent hazardous mold growth.

37. The CDC also reported that "buildings wet for more than 48 hours will generally support visible and extensive mold growth and should be remediated, and excessive exposure to mold contaminated materials can cause adverse health effects in susceptible persons regardless of the type of mold or the extent of contamination."

38. After August 28, 2017, the Corps continued to release water from the dams over the next several days and the waters continued to rise. Mandatory evacuation orders were ultimately issued, and properties remained underwater for several weeks to come.

39. Because of how the Corps released water from both Addicks and Barker during Harvey, Plaintiffs' properties, which otherwise would not have flooded, suffered catastrophic flooding and water damage. The Corps knew that Plaintiffs' properties would be flooded, but opened the dams in order to protect the "public good."

**D.    Plaintiffs' Experiences**

40.     When Harvey first hit the Houston area, Plaintiffs' properties did not experience any flooding from Harvey rainfall.

41.     Unfortunately, on August 28, 2017, in the middle of the night, the Corps decided to release massive amounts of water from Addicks and Barker reservoirs, causing massive flooding of Plaintiffs' homes and property.  The Corps knew that the Plaintiffs' properties would flood, and even contacted Centerpoint Energy to cut off Plaintiffs' power prior to the flooding.  Because of the releases in the dark of night, many of the property owners had no advanced notice that water was going to be released from the reservoirs and were completely caught off guard when they awoke to water rising at a dangerous rate of speed inside their homes.

42.     On August 28, 2017, water released from the reservoirs began entering the Plaintiffs' homes and properties and continued to rise.   Plaintiffs, their families, and neighbors were forced to evacuate as soon as possible or else stay and risk dangerous rising water levels with high amounts of sewage, bacteria, and contamination.

43.     Ultimately, the water rose to several feet inside each of Plaintiffs' properties. After the initial flooding, the properties remained flooded because of the continued releases by the Corps. The floodwaters sat idle and did not recede for over a week. In fact, the contaminated waters remained inside of Plaintiffs' homes and Plaintiffs were unable to access their properties or retrieve any personal belongings—or what was left of them—until several days afterwards.

44.     Plaintiffs' properties are in a demolished state and are uninhabitable. Many of Plaintiffs' personal effects were completely destroyed and can never be recovered.  With respect to the physical structures and land, Plaintiffs must endure the anguish and costs of demolition, remediation, and rebuilding before they can live or use their properties again. Even after Plaintiffs'

real properties are restored or rebuilt, the continued and long-term effects of mold, deterioration, and rot due to the unprecedented amount of time that floodwaters sat inside Plaintiffs' properties remain unknown.

## V.     CAUSE OF ACTION 1: Violation of the Takings Clause

45.     Plaintiffs repeat the allegations of the preceding paragraphs as if fully set forth herein.

46.     The Fifth Amendment to the United States Constitution prohibits the Government from taking private property for public use without just compensation. Plaintiffs have a legally-protectable private property interest in their real and/or personal property. Plaintiffs had distinct, reasonable, and investment-backed expectations that their properties would only be subject to flooding in line with historical flooding patterns established over the decades. Plaintiffs' private properties would not have otherwise flooded but for the Corps' decision to discharge water from the Addicks and Barker reservoirs.

47.     The Corps' decision to discharge water from the Addicks and Barker reservoirs was for public use. The Corps, a governmental entity, knew, or was substantially certain when it opened the flood gates that the Plaintiffs' properties would flood, and that, but for such action, Plaintiffs' properties would not have flooded. The Corps' conduct constitutes a taking of Plaintiffs' properties because, from August 28, 2017, and continuing for days or weeks, water continued to be released from the reservoirs and Plaintiffs were unable to return to their homes, experienced substantial damage to their personal and real property, and Plaintiffs were and will be deprived of the use, occupancy, and enjoyment of their property.

48.     As a direct result of the Corps' decision to discharge water from the Addicks and Barker reservoirs on August 28, 2017, Plaintiffs' private properties were flooded on and after

August 28, 2017, which caused substantial damage to Plaintiffs' properties, including, but not limited to the following which must be justly compensated:

> i. Physical damage and cost to repair or replace real property, home improvements, fixtures, structures, vehicles, personal effects, and more;
>
> ii. Diminution in the fair market value of the underlying land of Plaintiffs' properties, including the decreased market value to the real estate;
>
> iii. Compensation for the deprivation of the use, occupancy, and enjoyment of their private properties, both real and personal, as deemed just and fair by the Court;
>
> iv. Compensation for specific and extensive mold remediation, as appropriate under the circumstances, to prevent additional structural damage to the properties and/or resulting health hazards to those who live at the properties; and
>
> v. Interest from August 28, 2017, through the time of payment.

Plaintiffs have not been compensated for temporary or permanent taking of their homes and other private property by the Corps.

49. The Fifth Amendment is intended to prevent the government from burdening individuals, such as Plaintiffs, with the costs of furthering public interest. All losses sustained by Plaintiffs were reasonably foreseeable by the Government. All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred. Therefore, Plaintiffs seek just compensation for the temporary and permanent takings of their real and personal property in an amount to be determined at trial.

50. Further, Plaintiffs are also entitled to recover reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred in this proceeding pursuant to 42 U.S.C § 4652, and Rule 54 of the Rules of the United States Court of Federal Claims.

**PRAYER**

Wherefore, Plaintiffs respectfully request that this Court enter an order:

a) Declaring that Defendant's actions, as set out above, constitute a taking under the Fifth Amendment to the United States Constitution;

b) Awarding just compensation in an amount as outlined above or to be determined at trial;

c) Awarding Plaintiffs their reasonable litigation expenses and attorneys' fees;

d) Awarding Plaintiffs pre- and post-judgment interest, to the extent allowable; and

e) Awarding such other and further relief as justice and equity requires.

Respectfully submitted,

**THE PINKERTON LAW FIRM, PLLC**

By: */s/ Benjamin R. Roberts*
Benjamin R. Roberts
Attorney in Charge
Texas Bar No. 24068038
broberts@chadpinkerton.com
5020 Montrose Blvd., Suite 550
Houston, TX 77006
Telephone: (713) 360-6722
Facsimile: (713) 360-6810

**ATTORNEY FOR PLAINTIFFS**